UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Benjamin Erickson,

       Plaintiff,

v.                             MEMORANDUM & ORDER
                                    Civil No. 06-3734

Canadian Pacific Railway,

       Defendant.

_____

       John A. Fabian and Charles G. Frohman, Nichols Kaster & Anderson, PLLP for and on behalf of Plaintiff.

       Thomas J. Conley and Rebecca L. Neubauer, Leonard, Street and Deinard, P.A. for and on behalf of Defendant.

_____

       Plaintiff was an employee of Defendant Canadian Pacific Railway d/b/a Soo Line Railroad ("Soo Line") from March 2002 until March 3, 2006. Plaintiff filed this action, asserting claims under the Family Medical Leave Act, 29 U.S.C. § 2615 ("FMLA"), and the Americans with Disabilities Act, 42 U.S.C. § 12112(a) ("ADA").

       Currently before the Court is Soo Line's motion for summary judgment.

Factual Background

       Plaintiff began working for Soo Line in March 2002 as a freight conductor.

In February 2005, Plaintiff's mother became seriously ill, and he was granted

intermittent FMLA leave from March 25 to September 24, 2005 to allow him to

take care of her.  In April 2005, Plaintiff was also granted intermittent FMLA

leave for his own health issues - his depression and check-ups regarding an

earlier bout of skin cancer.

In June 2005, Plaintiff was accepted to the student engineer training

program.  This program includes classroom and field training, and is designed to

be completed in 26 weeks.  To graduate from the program, all students must

complete all necessary paperwork, successfully take written and simulator

exams, and pass a final qualification ride.  Saladin Aff. ¶ 5.  The paperwork

required of students consisted of daily evaluation forms, filled out by

experienced engineers that have completed a training run with the student, and

time slips which document the date, time, train number and supervising engineer

for each ride.  This paperwork was to be turned in on a weekly basis.

Plaintiff began classroom training on June 26, 2005, and successfully

passed the required tests during the three weeks allotted.  Neubauer Aff. Ex. A.

Thereafter, Plaintiff began the on-the-job training ("OJT") portion of the program,

and his supervisor was Norbert Denzer.  Denzer was new to this position when

Plaintiff began OJT.

Shortly after beginning OJT, Plaintiff began to experience some problems. For example, during a qualifying run on October 18, 2005, Plaintiff experienced difficulty stopping the train at an intersection where a vehicle was waiting. Neubauer Aff., Ex. E.   Although disputed by Plaintiff, Soo Line asserts that Plaintiff wasn't submitting his time slips and daily evaluation sheets on a timely basis.  Id. Denzer Dep. 26-27.  In a letter dated January 6, 2006, Soo Line informed Plaintiff that because he "failed to follow [his] supervisor's instructions . . . your Student Locomotive Engineer Certificate is suspended until you provide [your supervisor] with the required documents."  Neubauer Aff., Ex. F.  Plaintiff caught up on his paperwork, and resumed training on January 10, 2006.  Denzer Dep. 70; Saladin Dep. 73.

As Plaintiff started the engineer training program on June 25, 2005, he should have completed the training program twenty-six weeks later, on or about December 30, 2005.  Erickson Dep. 12; Denzer Dep. 66.  During that time period, however, Plaintiff had taken leave, due to personal health issues, and his mother's illness and death on September 11, 2005.  Accounting for those days, Soo Line calculated that Plaintiff should complete his training by February 16,

2006.  Denzer Dep. 139.

During a qualification check on January 25, 2006, Plaintiff again exhibited

numerous problems.  Neubauer Aff., Ex. G.  The comments on his evaluation

sheet for this run noted "poor handling on BN hill", "too fast in restricted speed

at Paynesville", "poor with air on BNSF hill", "lost focus in restricted speed at

Paynesville" and "did not respond in timely manner when instructed to slow in

restricted speed." Id.  Soo Line asserts that despite reminders and special

instructions to Plaintiff to address his specific issues, and knowing that he was

scheduled for his final qualifying trip on February 16, 2006, Plaintiff failed to

report to work on February 4, 5, 6, 7 and 9, 2006.  Erickson Dep. 65-66, 68-69 and

72.  He attended a rules class on February 8, 2006 rather than take a training run.

Erickson Dep 68.   Plaintiff is also alleged to have failed to notify Denzer that he

was not working those days.  Erickson Dep. 68-69, 72; Frohman Aff., Ex. 25.

Plaintiff and Denzer did speak on February 10, 2006, at which time Plaintiff

told Denzer that he had not been called by the crew management center ("CMC")

for a train on February 5, 2006.  Frohman Aff, Ex. 25; Neubauer Aff., Ex. H.

Denzer later learned that Plaintiff had not been assigned to the train because

Plaintiff had called in sick earlier in the evening.  Id.  Plaintiff was suspended on

4

February 10, and disqualified from the program on February 17, 2006. Denzer

Dep. 102; Neubauer Aff, Ex. H.

The asserted bases for the disqualification were: 1) his repeated failure to

turn in copies of his time slips and daily evaluation sheets; 2) his failure to work

from February 6 - 10, 2006, and 3) his misrepresentation to Denzer about the

reason he was not called by the CMC on February 5, 2006.  Neubauer Aff., Ex. H.

Because of the disqualification, the applicable collective bargaining agreement

prohibited Soo Line from returning Plaintiff to his previous position as a

conductor.  Neubauer Aff., Ex. I.  His employment was therefore terminated.

Standard

Summary judgment is appropriate if, viewing all facts in the light most

favorable to the non-moving party, there is no genuine issue as to any material

fact, and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ.

P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  The party seeking

summary judgment bears the burden of showing that there is no disputed issue

of material fact.  Celotex, 477 U.S. at 323.  This burden can be met "by 'showing' -

that is , pointing out to the district court - that there is an absence of evidence to

support the nonmoving party's case."  Id. at 325.  The party opposing summary

judgment may not rest upon mere allegations or denials, but must set forth specific facts showing that there is a genuine issue for trial.  Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th Cir.1995).

Analysis

1.  FMLA

The FMLA entitles an employee up to twelve weeks of leave due to the employee's own illness, or to care for a sick family member.  29 U.S.C. § 2612(a).  After taking such leave, the FMLA protects the employee's right to return to the same or an equivalent position, without loss of benefits.  29 U.S.C. § 2614(a).

Under the FMLA, an employee can assert two types of claims: interference and retaliation.  In this case, Plaintiff has asserted both claims.

1.  Retaliation

As indicated above, an employer cannot discriminate against its employees for taking leave under the FMLA.  Stallings v. Hussmann Corp., 447 F.3d 1041, 1051 (8th Cir. 2006).  The elements of a prima facie case are: 1) that the plaintiff exercised rights under the FMLA; 2) he suffered an adverse employment action; and 3) a causal connection between the two. Kipp v. Missouri Highway & Transp. Comm'n, 280 F.3d 893, 897 (8th Cir. 2002).

6

Soo Line argues that summary judgment in its favor on this claim is appropriate as there is no evidence of a causal connection between Plaintiff's termination, and his taking leave under the FMLA.  Temporal proximity alone is not sufficient.  Kiel v. Select Artificials, Inc., 169 F.3d 1131, 1136 (8th Cir. 1999).

Plaintiff has presented evidence of discriminatory remarks by his supervisors which raises genuine issues of material fact as to a causal connection between Plaintiff's suspension and eventual termination, and his taking FMLA leave.  For example, Plaintiff asserts that after he returned from bereavement leave on September 18, 2005, Denzer asked him if he was finally done with the FMLA.  Plaintiff Dep. 136, Plaintiff Aff. ¶ 5.  When Plaintiff replied no, Denzer appeared irritated and stated Plaintiff was running out of time to complete his training, and that it would not be wise to take more leave. Id.

Plaintiff also asserts he was suspended on January 6, 2006 not because he did not turn in his time slips, but because he did not provide Denzer with an accounting of his FMLA leave, as is evidenced in an email from Denzer to Saladin.  Plaintiff Ex. 11.

On January 7, 2006, Plaintiff provided Denzer with all the FMLA information he could find, and confided that he suffered from depression and

ADHD.  Frohman Ex. 13 and 14; Erickson Dep. 20-21.  Denzer asked Plaintiff if he

took medication, and if he wished to quit his job.  Erickson Dep. 22, Frohman

Aff., Ex. B, resp. 5.  Plaintiff said no, and Denzer suggested he take a few more

days to think about it.  Plaintiff Dep. 24.

Plaintiff further asserts that later, he learned that Denzer had contacted

Mike Kirkeberg with the Employee Assistance Program ("EAP").  Mr. Kirkeberg

recalls that Denzer asked him general questions about ADHD, and specifically

asked questions about Plaintiff filling out time sheets.  Kirkeberg Dep. 17-21.

When he learned the phone call was specifically about Plaintiff, Kirkeberg

testified that he ended the conversation.  Id. 21-22.  Plaintiff testified that

Kirkeberg had informed him of Denzer's phone call, and that during said call,

Denzer had asked if Plaintiff's ADHD would be grounds for disqualification.

Erickson Dep. 50-52.

Plaintiff further asserts that prior to receiving the probationary warning

letter dated January 6, 2006, he was unaware that the basis for his suspension was

his failure to provide paperwork other than the FMLA documents.  Erickson

Dep. 31.  He further asserts that prior to that time, he was not aware that he

should be turning in his time slips and daily evaluations more frequently than

8

what he was doing.  <u>Id.</u>

The Court further finds there are genuine issues of material fact concerning Soo Line's articulated business reason for its decision to disqualify Plaintiff from the engineer training program may be pretextual.  With regard to his absence during the early part of February, Plaintiff asserts that he reported to work on February 4, 2006, but that the CMC released the crew from the job and they did not go out. Plaintiff Ex. 13 ¶ 7.  Plaintiff fell sick later that day, and notified the CMC.  <u>Id.</u>; Plaintiff Dep. 66-67. He did not work on February 5 due to illness, but he did report to work on February 6, 2006.  Plaintiff told Denzer he had been out sick, and that same day the CMC failed to call Plaintiff on an assignment. Plaintiff Ex. 13 ¶ 10; Plaintiff Dep. 66, 78.  Plaintiff was set to go out with the west side crew on February 7, 2006, but the CMC called Plaintiff that morning and told him to attend a mandatory rules class on Wednesday, Feb. 8.  Plaintiff Dep. 68. Plaintiff attended the rules class on February 8, and the crew he was assigned to go out with did not return until the next day, February 9, 2006.  Plaintiff Ex. 13, ¶ 7. This same crew was scheduled to go out again on February 10, 2006.  <u>Id.</u>

Before setting out on his scheduled trip on February 10, Plaintiff went to speak with Denzer in his office.  <u>Id.</u> ¶ 8.  He asserts that he wanted to check with

Denzer whether he was still on track for marking up as an engineer, even though he was sick earlier in the week.  Id.  Plaintiff asserts that after operating a train all day on February 10, he was informed that he had been suspended from service. Id. ¶ 12.  When Plaintiff returned to the St. Paul yard later that night, he was escorted off the property by the yard manager, Mark Kirkpatrick, and was told that Soo Line can't "keep catering" to employees who have FMLA issues. Plaintiff Aff. ¶ 8.  Mr. Kirkpatrick also allegedly said that as Plaintiff was in trouble, "the company did not want me to 'fall in the parking lot' or 'walk in front of a train.'" Plaintiff Ex. 2.

Plaintiff asserts that after he was suspended in February, he provided Soo Line a letter rebutting each basis for suspension. Plaintiff Ex. 13.  In response to that letter, Saladin sent an email to Plaintiff's EAP representative and other managers, noting

> I do have some concerns about his reference to FMLA in his letter, however, note in my letter, I never made an issue of his time off for lack of documentation regarding the FMLA.  I see also he made comments about problems at home, health issues, etc. and ADHD.  I take his discussion on these items as personal problems and a distraction to the real issues here that I raised in my letter.

Plaintiff Ex. 30.  Plaintiff argues that the personal problems Saladin referred to

10

are presumably the illness and death of his mother, his divorce, loss of custody of

his children and his ADHD and depression.  These aren't distractions, they are

part of the reason Plaintiff took FMLA leave.  Saladin's dismissal of the reasons

behind Plaintiff's FMLA leave shows discriminatory animus in the decisional

process to terminate his employment.

The manner in which he was disqualified further raises genuine of issues

as to pretext.  Soo Line pulled Plaintiff from service days before his final

qualification ride.  If he had been allowed to take this final test, he would either

have been promoted to engineer if he passed, or he could have returned to the

conductor job if he failed.  By not allowing him to take the test, however, Plaintiff

had to be terminated.  From these facts, a jury could reasonably infer a

discriminatory intent on the part of Plaintiff's supervisor's.  Accordingly,

summary judgment on this claim is inappropriate.

2.  Interference claim

The elements of an interference claim are that Plaintiff was entitled to

FMLA leave, and that Soo Line unlawfully interfered with that leave.  Bacon v.

Hennepin County Med. Ctr., 2007 WL 4373104 * 4 (D. Minn. Dec. 11, 2007).  Soo

Line asserts that summary judgment is appropriate as Plaintiff cannot

demonstrate that Soo Line interfered with his right to take FMLA leave.  By

Plaintiff's own admission, Soo Line granted every FMLA request Plaintiff made.

Discouraging an employee from using FMLA leave constitutes interference

with the employee's FMLA rights.  29 C.F.R. § 825.220(a); <u>Stallings</u>, 447 F.3d at

1050.  Plaintiff asserts that he has submitted evidence that Soo Line discouraged

his rights to take leave under the FMLA, such as Denzer asking Plaintiff if he was

done taking FMLA leave.

Plaintiff further asserts that Soo Line interfered with his FMLA rights by

holding him out of service until he turned over FMLA documentation.  It was

Soo Line's responsibility for making and preserving records pertaining to their

obligations under the FMLA, however, and Soo Line did not do so.  As of March

1, 2006, Soo Line did not have FMLA leave recorded for Plaintiff after October 1,

2005 although Plaintiff had taken leave after that date. Plaintiff Exs. 34 and Ex. 32.

The Court agrees that genuine issues of material fact exist as to whether

Soo Line interfered with Plaintiff's rights under the FMLA.  Summary judgment

as to this claim must also be denied.

2.  ADA

The elements of a prima facie case of disability discrimination are: 1)

Plaintiff is disabled as defined by the ADA; 2) he is qualified to perform the

essential functions of the job, with or without reasonable accommodation; and 3)

he has suffered an adverse employment action due to his disability.  Pittari v.

American Eagle Airlines, Inc., 468 F.3d 1056, 1061 (8th Cir. 2006).

Soo Line asserts that Plaintiff does not have a disability as defined under

the ADA - which requires a showing of "(A) a physical or mental impairment

that substantially limits one or more of the major life activities of such individual;

(B) a record of such an impairment; or (C) being regarded as having such an

impairment.[1]"  Ristrom v. Asbestos Workers Local 34 Joint Apprentice

Committee, 370 F.3d 763, 768 (8th Cir. 2004).  To prove he is substantially limited

in a major life activity, Plaintiff must show that he is unable to perform, or is

significantly restricted in performing, an activity that the average person in the

general population can perform.  Ristrom, 370 F.3d at 769.

The Ristrom decision is particularly instructive as the plaintiff in that case,

like Plaintiff in this case, argued that he was disabled under the ADA due to his

ADD and depression.  The plaintiff had successfully completed two years of a

---

[1]In opposition to Defendant's motion for summary judgment, Plaintiff does not argue
that he was regarded as having a disability.  Accordingly, the Court need not address this issue.

three year apprenticeship program. Ultimately, the plaintiff was not able to

complete the third year of the program, as he was having continued problems

passing tests and completing course work.  In response to his argument that his

ADD and depression substantially limited him in the major life activity of

learning, the Eighth Circuit noted that ADD and depression are not disabilities

per se under the ADA.  Ristrom, 370 F.3d at 769.  The court further held that

evidence that the plaintiff had graduated high school and had successfully

completed the first two years of the apprenticeship program while working at a

full time job demonstrated that the plaintiff was not substantially limited in the

major life activity of learning, as compared to the average person.  Id.

"Employees who fail to learn or learn at a slower pace do not automatically

qualify for protection under the ADA.  Instead, the ADA protects only those

individuals who present reliable evidence proving a physical or mental

impairment that substantially limits their ability to learn as compared to the

average person."  Id.  See also, Leisen v. City of Shelbyville, 153 F.3d 805, 808 (7th

Cir. 1998) (finding that just because the plaintiff had difficulty passing a course

"does not show she was substantially limited in a major life activity of learning,

any more than the fact that a particular individual might not be able to pass a

14

course in physics or philosophy would allow an inference that all learning

activity was substantially limited.")

   The Court finds that the Plaintiff in this case has also failed to present

evidence that his ADHD and depression substantially limit his ability to

concentrate.  The record shows that Plaintiff completed high school, some college

courses, passed the conductor training program and the classroom portion of the

engineer training program, demonstrating that Plaintiff is able to succeed at tasks

despite his ADD and depression.  Furthermore, the record shows that during

engineer training, Plaintiff's mother passed away and he was going through a

divorce.  Given this evidence, Plaintiff would have to show that his

ADD/depression, as opposed to his other personal issues, caused him to have

problems during training.  Ristrom, at 770.  Plaintiff has not done so, however.

   With regard to his trouble sleeping, Plaintiff must demonstrate that his

sleeping patterns are significantly different from the rest of the population.  Rask

v. Presentus Medical Care North Am., Civ. No. 05-1267 (ADM/RLE) 2006 WL

3060143 at * 11 (D. Minn. Oct. 26, 2006) aff'd 509 F.3d 466 (8th Cir. 2007).  The

Eighth Circuit determined that evidence that a plaintiff could only sleep two or

three hours at a time, for a total of four to five hours per night, is not sufficient to

show sleeping patterns different from the rest of the population.  <u>Nuzum v.</u>

<u>Ozark Auto Distrib., Inc.</u>, 432 F.3d 839, 848 (8th Cir. 2005).  As in <u>Nuzum</u>, Plaintiff

has only demonstrated that he has trouble sleeping.  Plaintiff has not presented

the Court any evidence demonstrating that his sleeping patterns are significantly

different from the rest of the population.

 The Court further finds that Plaintiff has not demonstrated that he has a

record of a disability.  To establish that a plaintiff has a record of a disability, he

must show "'a record relied on by an employer indicates that the individual has

or has had a substantially limiting impairment.'  In other words, the record must

show an impairment that satisfies the ADA." <u>EEOC v. Automatic Systems Co.</u>,

169 F. Supp.2d 1001, 1006 (D. Minn. 2001) (citations omitted).  As discussed

above, there is no record that Plaintiff suffers from a substantially limiting

impairment.

 As Plaintiff has failed to raise a genuine issue of material fact that he is

disabled as defined in the ADA, summary judgment as to Plaintiff's ADA claim

is appropriate.

IT IS HEREBY ORDERED that Defendant's Motion for Summary Judgment

[Doc. No. 23] is GRANTED in part and DENIED in part.  Count II of the First

Amended Complaint is hereby DISMISSED WITH PREJUDICE.

Date: April 9, 2008

s / Michael J. Davis
Michael J. Davis
United States District Court

Civil No. 06-3734